UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| Michael "Skylar" Theroux, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | Civil Action No. 4:23-cv-40021-MRG |
| Carol Mici, et al., | ) ) ) | |
| *Defendants*. | ) ) | |

# MEMORANDUM AND ORDER

**GUZMAN, J.**

Plaintiff Michael "Skylar" Theroux ("Theroux") filed this lawsuit against three members of the Massachusetts Department of Corrections ("DOC"). They include Commissioner Carol Mici ("Defendant Mici"), Superintendent Matthew Divris ("Defendant Divris"), and Corrections Officer Michael Ford ("Defendant Ford") (collectively "Defendants"). Theroux brings forth a claim under 42 U.S.C. § 1983 ("Section 1983") alleging violations of her Eighth Amendment rights. Defendants are now moving to dismiss Theroux's Amended Complaint [ECF No. 17] ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court **GRANTS** the Defendant's motion to dismiss.

## I. BACKGROUND

Michael "Skylar" Theroux ("Theroux"), a transgender female, was at all relevant times incarcerated by the Commonewealth of Massachusetts. [Compl. ¶ 3]. Theroux was in the custody of the Massachusetts Department of Correction ("DOC") at the North Central Correctional Institution ("N.C.C.I") in Gardner, Massachusetts. [Id.] All three Defendants were at relevant times employees of the DOC. Specifically, Carol Mici is the Commissioner of DOC, Matthew

Divris is the superintendent of N.C.C.I, and Michael Ford is a corrections officer ("CO") (collectively "Defendants"). [Id. ¶¶ 4-6].

While incarcerated, Theroux lived in cell 234 on the second floor of Thompson Hall at N.C.C.I. [Id. ¶ 8]. The assailant responsible for the sexual assault against Theroux, Eric Denson, lived in cell 265 of the same floor. [Id. ¶ 9]. Officer Ford was the CO assigned to this floor. [Id. ¶ 5]. On June 29, 2022, Theroux was raped by Denson in room 265. [Id. ¶ 10]. At approximately 5:04 PM on that day, Denson blocked his cell window with a trash bag (a violation of DOC policy) while Officer Ford was conducting his rounds on the floor. [Id. ¶ 11]. Shortly thereafter, an anonymous call to the "I.P.S. PREA line" was dialed declaring that a non-consensual sexual act was in progress in cell 265 belonging to Denson. [Id. ¶ 14]. Theroux was verified as being orally raped and was placed into wrist restraints and escorted to the medical unit. [Id. ¶ 15]. After medical evaluation, Theroux was transported to Beth Israel Medical Center for further testing and bloodwork. [Id. ¶ 17]. The following day, Theroux returned to N.C.C.I. with prescribed STD/HIV medications. [Id. ¶ 18].

Theroux alleges that Defendant Matthew Divris allowed Eric Denson, a "known predator" to move into cell 265, on a floor where "vulnerable" and "trans-female inmates" such as the plaintiff reside. [Id. ¶ 12]. Further, Theroux alleges that Defendant Carol Mici knowingly transferred Denson to N.C.C.I., instead of keeping him at a level 5 maximum security facility where he had previously committed another non-consensual sexual assault. [Id. ¶ 13]. As a result, Theroux claims the three Defendants failed to protect her against physical abuse and knew that Denson was a threat to her safety but failed to rectify the situation. [Id. ¶¶ 19-20].

## II.  **LEGAL STANDARDS**

Dismissal under Rule 12(b)(6) is appropriate "if, after accepting all well-pleaded facts as

true and drawing all reasonable inferences in favor of a plaintiff, the court determines that [the complaint] 'fails to state a claim upon which relief can be granted.'" Doe v. Williston Northampton Sch., 766 F. Supp. 2d 310, 311 (D. Mass. 2011) (quoting Edes v. Verizon Commc'ns, Inc., 417 F.3d 133, 137 (1st Cir. 2005); Fed. R. Civ. P. 12(b)(6)). A complaint must contain sufficient factual allegations to state a claim to relief that is "both actionable as a matter of law and 'plausible on its face.'" Id. at 311-12 (quoting Ashcroft v. Iqbal, 566 U.S. 662, 663 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss, a complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citation omitted).

When evaluating documents filed pro se, the Court is to construe these documents liberally and in favor of the drafter. See Ayala Serrano v. Lebron Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (stating the rule that "pro se pleadings are to be liberally construed, in favor of the pro se party"). Further, courts should be aware of the obstacles that pro se litigants face and may hold them to less demanding standards. See Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008) (explaining "we are solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, we hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects").

### III. **DISCUSSION**

#### A. **Plaintiff's Claims Are Not Procedurally Barred**

The Prison Litigation Reform Act ("PLRA") requires that a plaintiff challenging prison conditions under the statute exhaust their administrative remedies prior to bringing a private

action. See 42 U.S.C. §1997e. This requirement is an affirmative defense that must be raised by a defendant, and as a result, the defendant bears the burden of establishing non-exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007) (stating the rule that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

Here, Defendants do not provide the Court with any additional evidence to support their exhaustion defense. Instead, Defendants point to the Amended Complaint's lack of references to administrative remedies as evidence of failure to exhaust. [ECF No. 60 at 4]. While it is clear from the Amended Complaint that there is no mention of exhaustion of administrative remedies, [ECF No. 17], as identified above, this Court is required to hold pro se pleadings to "less demanding standards" in order to help guard against the loss of valid claims due to "technical defects." Dutil, 550 F.3d at 158. This warrants consideration of evidence outside Theroux's Amended Complaint. Specifically, in her opposition to the motion to dismiss, Theroux provides the Court with, among other things, a "Demand Letter" and "Inmate Grievance Appeal Form" as evidence of exhaustion. [ECF No. 67]. As the Defendants point out, 103 Mass. Code Regs. 491 regulates the grievance process for inmates. These regulations allow inmates to file grievances with the Department of Corrections, and upon receipt of a decision, allows them to appeal to the appellate authority. See generally 103 Mass. Code Regs. 491. Further, section 491.16 governs the appeal process, and provides that no other level of appeal or review is to be allowed. 103 Mass. Code Regs. 491.16(2). Based off these procedures, this Court has previously found the submission of "Inmate Appeal Grievance Forms" to be sufficient evidence to survive a failure to exhaust defense. See Talley v. Berkshire Cnty. House of Correction, No. 12-CV-30138-MAP, 2013 WL 5012942, at *6 (D. Mass. Sept. 11, 2013). Theroux has provided this Court with her

"Inmate Appeal Grievance Form," which was the final administrative remedy available to her. As a result, the Defendants have failed to establish the failure to exhaust affirmative defense under the PLRA.

### B. Section 1983 Claim

Theroux brings her claim against all three Defendants under 43 U.S.C. § 1983. Section 1983 provides a remedy for those whose rights have been violated under the laws of the United States. See Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008). Specifically, Theroux alleges the Defendants violated her Eight Amendment rights. [Compl. ¶¶ 19-22]. It has been established that under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Giroux v. Somerset Cnty., 178 F.3d 28, 32 (1st Cir. 1999) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)). Nevertheless, not every injury will give rise to an Eighth Amendment claim. See Giroux, 178 F.3d at 32 ("[N]ot every injury suffered by a prisoner at the hands of a fellow inmate gives rise to an Eighth Amendment claim.")

In a case, like this one, for failure to prevent harm in the prison context, a prisoner is deprived of their Eighth Amendment right when two requirements are met. Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005). First, objectively, the plaintiff must establish that "the conditions of his confinement deny [her] the minimal measure of necessities required for civilized living," and secondly, subjectively, that the prison official acted "deliberately indifferent to inmate health or safety." Id. at 18-19. To meet the objective prong, the violation must be "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994). To meet the subjective prong, "deliberate indifference" requires the plaintiff to establish that the official knew of and disregarded an "excessive risk to inmate health or safety." Id. at 837. The standard for this is one akin to

criminal recklessness. Id. at 839. Against this backdrop, Theroux has failed to allege that the Defendants have violated her Eighth Amendment rights.

### 1. Theroux Has Failed to Allege Defendant Mici Violated Her Eighth Amendment Rights

In her complaint, Theroux alleges that Mici is "legally responsible for N.C.C.I. Gardner, [its] inmates and employees." [Compl. ¶ 4]. From this language, it seems Theroux is attempting to hold Commissioner Mici liable on the theory of respondeat superior, but generally, a supervisor cannot be held liable under a section 1983 claim on this theory. See Justiniano v. Walker, 986 F.3d 11, 20 (1st Cir. 2021). A "supervisor's liability must be premised on [her] own acts or omissions." Id. (alterations in original) (quoting Guadalupe-Báez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016)). To connect the dots of liability on a respondeat superior theory, a plaintiff must show first, "that one of the supervisor's subordinates abridged the plaintiff's constitutional rights." Guadalupe-Báez, 819 F.3d at 514 (citing Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir.2008)). Second, a plaintiff must show that the supervisor's conduct was linked to the violation "in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." Id. at 515 (quoting Pineda, 533 F.3d at 54).

Here, even assuming Defendant Mici's subordinates (Defendant Divris or Defendant Ford) committed an Eighth Amendment violation, Mici's conduct did not add up to "gross negligence amounting to deliberate indifference." Id. Aside from the assertion that Defendant Mici is "legally responsible," the only other allegations concerning Defendant Mici are that she "knowingly transferred" a sexually dangerous prisoner to N.C.C.I. [Compl. ¶ 13], that she "failed to protect the plaintiff" [Id. ¶ 19], and that she "clearly knew" there was a threat to the Theroux's safety. [Id. ¶ 20]. While this Court is required to liberally construe pro se complaints, this does

not relieve a pro se litigant of the requirement to plead basic facts sufficient to state a claim. Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980) (citing Leonardo v. Moran, 611 F.2d 397, 398 (1st Cir. 1979)). Theroux offers no evidence to link the conduct of Mici's subordinates to her, nor does she allege any facts that are sufficient to allow this Court to draw any reasonable inference of deliberate indifference. What is alleged are simply conclusory statements that amount to bare assertions. She claims that Defendant Mici is "legally responsible," but when "a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). Accordingly, Defendant Mici must be dismissed from this action.

## 2. Theroux Has Failed to Allege Defendant Divris Violated Her Eighth Amendment Rights

Theroux's claim against Defendant Divris meets a similar fate. Her main allegation is that Defendant Divris allowed a "known predator" to be move into a unit where "vulnerable" and "trans-female inmates," such as Theroux, lived. [Compl. ¶ 12]. Specifically, Theroux claims that Defendant Divris "failed to protect" her, since he "clearly knew" that there was a threat to Theroux's safety. [Id. ¶¶ 19-20]. As such, Theroux contends that this conduct requires that the Defendant Divris be held liable for a violation of her Eighth Amendment rights. [Id. ¶ 20]. As outlined above, a violation of an inmate's Eighth Amendment rights in a failure to protect case requires the violation itself be "sufficiently serious" and requires the prison official to have acted with "deliberate indifference" to inmate health or safety. Farmer, 511 U.S. at 837.

Here, we can agree that rape is a sufficiently serious violation. See Calderon-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 64 (1st Cir. 2002) (ruling that in the context of a failure to protect case, a forced sodomy allegation was an objectively serious depravation.). The second prong of this test is where Theroux falls short. To be held liable for an Eighth Amendment violation,

Defendant Divris would have needed to have acted recklessly in regard to Theroux's health and safety. See Farmer, 511 U.S. at 839. There is nothing to support this position aside from the allegation that Defendant Divris transferred a dangerous inmate to live with other vulnerable inmates. This, on its own, does not rise to the level of recklessness.

Even assuming Defendant Divris' conduct was reckless, the claim would still not have merit. In the Complaint, Theroux provided no factual basis to establish how Defendant Divirs would have been aware of the risks that Eric Denson posed to the other inmates. See id. at 837 (holding that a prison official cannot be found liable under the Eighth Amendment for violations unless the official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."). There is nothing in the Complaint to support the inference that Defendant Divris knew of a substantial risk of harm to Theroux, and "[p]rison officials cannot be indifferent, of course, if they are unaware of the risk." Burrell v. Hampshire Cnty., 307 F.3d 1, 8 (1st Cir. 2002). Without more, the assertion that Divris "clearly knew" that Denson was a threat is merely a conclusory statement that cannot be the basis for an Eighth Amendment claim. Accordingly, Defendant Divris must be dismissed from this action.

### 3. Theroux Has Failed to Allege Defendant Ford Violated Her Eighth Amendment Rights

For similar reasons, Defendant Ford must also be dismissed from this action. Like Defendant Divris, Theroux has failed to establish that Defendant Ford acted with "deliberate indifference" to inmate health or safety, and, as such, has failed to meet the standard required. Farmer, 511 U.S. at 837. Theroux alleges that Eric Denson blocked his cell window with a trash bag and that Defendant Ford "failed to address" this blocked window while conducting a round. [Compl. ¶ 11]. A failure to address does not amount to deliberate indifference. There is no

allegation that Defendant Ford actually saw the blocked trash bag and deliberately ignored it. Under the Farmer standard, "'an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment'" under the Eighth Amendment. Leite v. Bergeron, 911 F.3d 47, 53 (1st Cir. 2018) (quoting Farmer, 511 U.S. at 838). Further, a reviewing court should look to what a defendant's mental attitude "actually was" compared instead to what it "should have been" when assessing deliberate indifference. Farmer, 511 U.S. at 839. Applying that standard here, while Ford likely should have noticed the blocked window while making his rounds, liability cannot be assessed to someone that was unaware of a risk, and there was nothing in the Complaint alleging that Defendant Ford saw the blocked window.

Even assuming Defendant Ford saw and overlooked the blocked window, this would not amount to deliberate indifference under Farmer. This standard "has considerable bite." Kestenbaum v. President & Fellows of Harv. Coll., 743 F. Supp. 3d 297, 308 (D. Mass. 2024) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 73 (1st Cir. 2011)). "Deliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. Without more, even when viewing everything in light most favorable to Theroux, this act amounts to no more than mere negligence. Ignoring a blocked cell window, in our view, does not give rise to reckless behavior under the deliberate indifference standard. Accordingly, Defendant Ford must be dismissed from this action.

### IV.    CONCLUSION

For the reasons stated above the Court **GRANTS** Defendant's motion to dismiss without prejudice.

**SO ORDERED.**

Dated: March, 28, 2025

                                                   */s/ Margaret R. Guzman*
                                                   Margaret R. Guzman
                                                   United States District Judge